KELLY, Circuit Judge,
concurring in part and dissenting in part.
I concur in the court’s opinion except for Part 111(A)(5), the Ake claim.
As to that part, I must dissent.
*1169 To execute a person because he could not come up with the $2,050 to employ an appropriate mental health expert plainly violates due process.
Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), is clear. When a defendant ex parte shows that his “mental condition” may well be a “significant factor” at sentencing, the defendant has the “readily apparent” due process right to “a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.” Ake, 470 U.S. at 82-83, 105 S.Ct. 1087.
Mr. Alverson merited expert assistance under Ake, and the state trial court properly authorized $750 for Jean Carlton, a social worker. Ct. Op. at 25. But after Ms. Carlton identified symptoms of a major brain disorder, the trial court wrongly rejected Mr. Alverson’s requests for funds for a neuro-psychologist.
That Ms. Carlton was not competent to diagnose brain injury did not negate Mr. Alverson’s showing of need for testing. Mr. Alverson’s counsel submitted Ms. Carlton’s evaluations because they raised strong suspicions of brain disorder, and he had no other way to prove Mr. Alverson’s need for further investigation. 1 State Tr. at 26 (transcripts); 2 State R. at 328 (pleadings).
The State demanded more evidence. But it withheld the funds that would enable Mr. Alverson to provide it. Requiring a defendant to prove, in advance, what he needed the money to prove gets it backwards.
Ms. Carlton’s competence or incompetence can only factor in favor of granting funds. Either Ms. Carlton was incompetent, such that reliance upon her alone violated Mr. Alverson’s right to a competent expert, or she was competent, such that her recommendation merited funds for a neurological expert. Ake, 470 U.S. at 78-79, 105 S.Ct. 1087. And if her reports were insufficient, surely the neuro-psychologist’s recommendation for testing, submitted pro bono and as a concerned citizen, made the minimal showing of need. 2 State R. at 358, 360. Silent records cannot cancel out these suspicions.
It is clear that the trial judge ignored Mr. Alverson’s experts. He denied funds because he personally did not note any signs of mental deficiency while Mr. Alverson was in court. 4 State Tr. at 57, 63; 5 State Tr. at 4.
That the trial judge could not diagnose neurological disorders from the bench is a totally improper and insufficient basis to deny the modest funds needed to properly defend an indigent defendant.[1] 1 State Tr. at 28-29. Though this court suggests that the state trial court considered several other sources in denying the additional funds, these sources simply cannot negate the suspicions raised and the need for further investigation by a competent and qualified professional neuro-psychologist. Thus, this court’s comment that neither Mr. Alverson nor the dissent have addressed the rationale of the OCCA in upholding the denial of funds is not correct-the findings of the OCCA cannot justify its result.
The federal district court also concluded that the violation did not have “substantial *1170 and injurious effect or influence in determining the jury’s [death penalty] verdict,” Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), because (1) the jury rejected Mr. Alverson’s future dangerousness as an aggravating factor and (2) any mitigating evidence that could have resulted from a neurological examination would not have affected the jury’s finding of the other two aggravating factors. Alverson v. Sirmons, No. 00-CV-528-TCK-SAJ, 2008 WL 5122348, at *10-12 (NJD.Okla. Dec. 5, 2008). This overlooks that Mr. Alverson merited an expert’s aid (1) to demonstrate his culpability for the crime, (2) to disprove the two aggravating factors implicating his mental state, (3) to mitigate against a death sentence, and (4) to help the jury decide upon a final sentence.
This court apparently agrees with the State’s observation that the trial court only denied “additional” evaluation and that Ms. Carlton adequately testified. Ct. Op. at 13-15, 25, 29; Aplee Br. at 29-30, 34-35. This observation is patently incorrect.
On cross examination, the State revealed that Ms. Carlton was so unqualified and incompetent that her testimony said nothing whatsoever about Mr. Alverson’s psychology. 9 State Tr. at 176-219; 10 State Tr. at 37. The State marched through a harrowing list of Mr. Alverson’s mental and personality traits, and Ms. Carlton agreed time after time that these traits were psychopathic. 9 State Tr. at 203-219, 230-232. Besides this “adequate” testimony, Mr. Alverson had no mitigating case to speak of. 3 State R. at 422.
On the one hand, the State holds up the social worker’s initial evaluation as “proof’ that Mr. Alverson received the help he needed. On the other hand, the State went to great lengths to convince the jury that Ms. Carlton was totally inept and unqualified. All this is doublespeak, merely to save the State a few dollars and to ensure that the jury would sentence Mr. Alverson to death as a psychopath.
If Mr. Alverson had received a competent evaluation, he very well could have presented evidence that he was not a psychopath and that he suffered from an undiagnosed organic brain disorder reducing his culpability for his behavior. Affidavit of Dr. Philip J. Murphy, Application for Post-Conviction Relief at Ex. 5, Alverson v. State, No. PC-98-1182 (Okla.Crim.App. April 26, 1999). This evidence would have provided Mr. Alverson a mitigation case and could well have tipped the scales in a jury’s choice of a final sentence.
If Oklahoma is going to continue to seek to exact the ultimate punishment, it ought to pay the cost of ensuring that it does not carry out its quest for vengeance on a person who, with appropriate assistance, might be spared.
I would remand the case to the district court with instructions to conditionally grant the writ.

. In an intervening case between Mr. Alverson's trial and his direct appeal, the OCCA reaffirmed that Ake required provision of the requested services and criticized the same trial judge for using this illegal heightened showing standard. Fitzgerald v. State, 972 P.2d 1157, 1166-68 (Okla.Crim.App.1998). The OCCA apparently ignored this precedent when it jumped to decide this issue without the benefits of briefing or a full recitation of facts. Alverson v. State, 983 P.2d 498, 511 (Okla.Crim.App. 1999).